UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOHNNY REESE III, | No. ED CV 09-1049-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

I.

**PROCEEDINGS**

Plaintiff filed this action on June 18, 2009, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 14, 2009, and July 20, 2009. The parties filed a Joint Stipulation on November 10, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 28, 1980. [Administrative Record ("AR") at 124.] He has a high school education [AR at 139] and has past relevant work as a warehouse worker. [AR at 127.]

On March 28, 2007, plaintiff applied for Supplemental Security Income payments, claiming an inability to work since February 16, 2007, due to an injury to his left leg. [AR at 8, 10, 124, 135.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 8, 62-66, 68-72, 75.] A hearing was held on November 19, 2008, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 29-59.] A vocational expert and a third party witness also testified. [AR at 44-58.] On March 12, 2009, the ALJ determined that plaintiff was not disabled. [AR at 5-15.] When the Appeals Council denied plaintiff's request for review of the hearing decision on May 6, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer

to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" ("RFC")[1] to perform his past work; if so, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520(g), 416.920(g); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial gainful activity since March 28, 2007, the date of his application for Supplemental Security Income payments. [AR at 10.] At step two, the ALJ concluded that plaintiff has the "severe" impairments of left hand/finger disorder, right shoulder disorder, and left leg disorder. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity to perform "a range of work between sedentary and light work" with certain limitations.[2] [AR at 10-

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(c), 416.967(c). Here, the ALJ specifically found that plaintiff is "capable of lifting and/or carrying 10 pounds frequently and 20 pounds occasionally; standing and/or walking 2 hours of an 8 hour day; and sitting 6 hours in an 8 hour day. [Plaintiff] is occasionally able to push/pull and use arm levers and controls with his left upper extremity. He is unable to use foot controls with his left lower extremity. He is able to climb ramps or stairs, but less than occasionally. He is unable to climb ladders, scaffolds, or ropes; and [is unable to walk] on uneven terrain. He does not need a hand-held assistive device for walking; however, for long distances he should be allowed to use a drop-foo[t] brace and a cane. Finally, [plaintiff is unable to] work at unprotected heights [or] around flashing, strong, or bright lighting, [or] around strong odors." [AR at 11.]

4

11.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 14.] At step five, using the Medical-Vocational Rules as a framework and the vocational expert's testimony, the ALJ concluded that plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [AR at 14-15.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 15.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly (1) develop the record regarding plaintiff's alleged mental impairment; (2) assess the credibility of a third party witness; and (3) assess plaintiff's credibility. [Joint Stipulation ("JS") at 2.] As set forth below, the Court agrees with plaintiff that the ALJ failed to properly develop the record and did not properly assess the credibility of the third party witness, and remands the matter for further proceedings.

### A. THE ALJ'S DUTY TO DEVELOP THE RECORD

Plaintiff contends that the ALJ failed to satisfy his duty to fully and fairly develop the record by failing to sufficiently investigate plaintiff's potential mental impairment. [JS at 3-5, 8-9.] Although a Social Security claimant bears the burden of proving disability, the ALJ "always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ's responsibility stems in part from the basic premise that disability hearings are not adversarial in nature. See Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."). It is also based on the regulatory directive that, in an administrative hearing, the ALJ "looks fully into the issues." See 20 C.F.R. §§ 404.944, 416.1444. As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence are addressed

5

so that the disability determination is made on a sufficient record of information. See Tidwell v. Apfel, 161 F.3d 590, 602 (9th Cir. 1999). The ALJ's duty is heightened where the claimant may have a mental impairment. Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992).

Here, plaintiff testified that his ability to work was limited because he was paranoid, unable to "be around most people," and he did not trust others. [AR at 37.] Aside from weekly attendance at church or occasional trips to his sister's house, he reportedly stayed at home most of the time because he felt "safe" there. [AR at 38.] Plaintiff also testified that he spent most of his time watching television and that he had recurring thoughts about his shooting incidents.[3] [AR at 43.] He testified that he went for treatment to a "behavior center" where he was prescribed Neurontin, but he did not take the medication because, based on past experience, he believed he would not be able to tolerate it. [AR at 43-44.] However, plaintiff believed "that kind of therapy" would help him. [AR at 44.] Plaintiff's mother, Georgia Reese, testified that plaintiff was "really depressed," reluctant to talk about his problems, and that he had anger control issues. [AR at 47-48.] In February 2008, plaintiff reported to an emergency room physician that he suffered from insomnia and recurrent nightmares about his shooting incidents. [AR at 310.] The physician wrote that plaintiff had "probable PTSD"[4] and advised plaintiff to see a psychiatrist. [AR at 309.]

The record does not contain any documentation from the behavior center or from any other medical source related to the diagnosis or treatment of plaintiff's possible mental impairment.

---

[3] Plaintiff was injured in two separate shooting incidents. On February 16, 2007, plaintiff received multiple gunshot wounds to both thighs. [AR 171.] After emergency and inpatient treatment, he was discharged with diagnoses of a gunshot wound to the left thigh with much muscle loss; severe venous injury, repaired; nerve injury resulting in a foot drop and loss of use of the ankle and foot; and a gunshot wound to the right thigh with a laceration that was healing. [AR at 192.] On May 16, 2007, plaintiff received multiple gunshot wounds to the face, head, left upper extremity, left hand, and right chest. [AR at 227.] Following treatment, plaintiff was diagnosed with a left index finger metacarpal fracture, a left mandibular subcondylar fracture, and a right zygomaticomaxillary complex fracture. [AR at 285, 287.]

[4] The parties dispute whether this notation constitutes a diagnosis of post-traumatic stress disorder or a recommendation that plaintiff be evaluated for this condition. [JS at 3-4, 5, 7, 8.] Though the Court believes the notation is more likely a recommendation for evaluation than a diagnosis, the dispute itself illustrates an ambiguity in the record that triggered the ALJ's duty to conduct a more thorough inquiry. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

Nonetheless, the ALJ concluded that "any mental impairment the claimant may have is considered non-severe as defined in the Regulations." [AR at 10.] The ALJ relied on three questionable grounds to support this conclusion. First, the ALJ stated that "[t]he evidence of record does not document any of" plaintiff's allegations of "confusion, depression, and paranoia." [Id.] As discussed above, however, a doctor noted that plaintiff had "probable PTSD" and Ms. Reese testified that plaintiff was "really depressed." [AR at 47-48, 309.] The ALJ next stated that the record did not "document the claimant making any of these allegations to any of his doctors and there are no treatment records to indicate he was ever treated for any mental or psychiatric impairment." [AR at 10.] However, the ALJ made no effort to obtain records from the behavior center, which may support plaintiff's allegations of mental impairment and explain, for example, why he was prescribed Neurontin. Moreover, the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (internal quotations omitted). Finally, the ALJ faults plaintiff for failing to mention "any psychiatric involvement" when asked generally about his complaints at a consultative orthopedic evaluation. [AR at 10.] However, it is not surprising that plaintiff did not mention any psychiatric issues when an orthopedic surgeon asked about his condition; plaintiff's complaints of "pain in the left hand and left leg" were entirely consistent with the purpose of the examination and the consulting physician's specialty. [See AR at 266.] See Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006) (ALJ could not reasonably rely on a "single, open-ended question . . . to elicit the sort of information necessary to fully and fairly develop the record").

At best, the record is incomplete as to plaintiff's possible mental impairment, and the ALJ must investigate the issue further. See Tonapetyan, 242 F.3d at 1150 (holding that ALJ must conduct appropriate investigation where evidence is ambiguous or insufficient to render a decision). On remand, the ALJ should consider contacting the behavior center for plaintiff's treatment records and ordering a consultative psychiatric examination. See 20 C.F.R. §§

404.1512(e)-(f), 416.912(e)-(f) (noting that agency will contact treating physicians and/or order consultative examinations to obtain additional information); see also Reed v. Massanari, 270 F.3d 838, 842-43 (9th Cir. 2001) (noting that "[s]ome kinds of cases . . . do 'normally require a consultative examination,' including those in which 'additional evidence needed is not contained in the records of [the claimant's] medical sources,' and those involving an 'ambiguity or insufficiency in the evidence [that] must be resolved.'" (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b))); Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985) ("[I]f the Secretary is doubtful as to the severity of [a claimant's] disorder the appropriate course is to request a consultative evaluation . . . . The failure to do so in this instance constitutes the requisite 'good cause' for remand . . . .").

## B.    THE ALJ'S CONSIDERATION OF LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ failed to properly consider the lay witness statements of plaintiff's mother, Georgia Reese. [JS at 9-11, 14.] As set forth below, the Court agrees that the ALJ did not properly discount the credibility of Ms. Reese.

"In addition to evidence from . . . medical sources, . . . [an ALJ] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy." Id. Thus, "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 813 F.2d 1226, 1232 (9th Cir. 1987). An ALJ may reject lay testimony only for specific reasons germane to each witness. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

As discussed above, Ms. Reese testified, among other things, that plaintiff was "really depressed," reluctant to talk about his problems, and that he had anger control issues. [AR at 47-48.] However, the ALJ discounted Ms. Reese's testimony because he "determined the following credibility factors were particularly applicable: whether and to what extent the person may have a pecuniary interest in the outcome of the hearing; and whether and to what extent the evidence

may be colored by friendship or kinship." [AR at 12.] The ALJ further opined that Ms. Reese's "testimony appears to be an attempt to lend the claimant some credibility and to assist in securing financial assistance," and he found her "testimony unsupported by any of the evidence." [AR at 13.]

As defendant admits, "[g]enerally an allegation that a family member is not credible based on pecuniary gain or bias alone is not sufficient to reject the testimony of a lay witness." [JS at 12 (citing Sprague, 812 F.2d at 1231-32).] Here, the ALJ did not explain how the stated reasons were specifically germane to Ms. Reese. Defendant's attempt to justify the ALJ's conclusion by pointing out that "[p]laintiff is supported by his parents and . . . they would have a financial interest in his obtaining benefits" [JS at 12-13] is not persuasive. If supported by substantial evidence, bias and financial motive may serve as legitimate reasons to discredit the testimony of a third party. See, e.g., Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Buckner v. Apfel, 213 F.3d 1006, 1013 (8th Cir. 2000). However, "the fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony," Regennitter, 166 F.3d at 1298 (internal quotations omitted), and bias cannot be presumed from kinship alone; the ALJ has provided no specific reasons germane to Ms. Reese to make such a presumption. Finally, the ALJ's conclusory statement that Ms. Reese's testimony was "unsupported by any of the evidence" is not persuasive, particularly in light of the Court's conclusion that the ALJ did not fully and fairly develop the record as to plaintiff's potential mental impairment. The ALJ erred by failing to provide specific reasons germane to Ms. Reese for discounting her testimony. Remand is warranted on this issue.[5]

/
/
/
/

---

[5] In light of the Court's remand order, the Court does not address plaintiff's remaining contention of error, but notes that evaluation of the above issues on remand may impact the ALJ's assessment of plaintiff's credibility.

9

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to develop the record concerning plaintiff's potential mental impairment and to properly consider the testimony of the third party witness. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision. Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 28, 2010

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE